**ALVERSON TAYLOR & SANDERS**
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
6605 Grand Montecito Parkway
Suite 200
Las Vegas, Nevada 89149
(702) 384-7000
(702) 385-7000 (Fax)
efile@alversontaylor.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CROSS CONSTRUCTION COMPANY, LLC., a Nevada liability company;<br><br>Plaintiff,<br><br>vs.<br><br>LA LASER CENTER, PC, a California Professional Medical Corporation; DANIEL TAHERI, an individual; and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.:<br>Dept No.:<br><br>**COMPLAINT** |

COMES NOW Plaintiff CROSS CONSTRUCTION COMPANY, LLC., a Nevada limited liability company ("Cross"), by and through their attorneys of record, Alverson Taylor & Sanders, and complains, avers, and alleges against Defendants LA LASER CENTER, PC, a California Professional Medical Corporation, DANIEL TAHERI, an individual, and DOES 1 through 50 inclusive (collectively "Defendants") as follows:

## **NATURE OF THE ACTION**

1. The following is a civil action brought by Plaintiff against the Defendants for Fraudulent and Negligent Misrepresentation, Defamation, Tortious Interference with Contractual Relations and Tortious Interference with an Economic Advantage.

## **THE PARTIES**

2. At all times relevant herein, Plaintiff CROSS CONSTRUCTION COMPANY, LLC ("Cross" or "Plaintiff") was and is a registered Nevada limited liability company doing business in Clark County, Nevada.

3. Defendant LA LASER CENTER, PC ("LALC"), is a California Professional Medical Corporation with its primary place of business in Los Angeles County, California.

4. Defendant DANIEL TAHERI ("Taheri"), resides in Beverly Hills, California.

5. Defendants, DOES 1 through 50, inclusive, are individuals or other entities which may have been involved in the issues presented herein. As of the filing of this Complaint, Plaintiff is unaware of the true identities of these Defendants, and Plaintiff will amend this Complaint to substitute the exact names of the proper Defendants in place of DOES 1 through 50, inclusive, when they have been ascertained.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C 1332(a)(1) and the matter in controversy exceeds the sum of $75,000.

7. Venue of this action properly lies in this district pursuant to 28 U.S.C. 1391(b)(2) and (3).

## GENERAL ALLEGATIONS

8. Plaintiff realleges all paragraphs of its Complaint and by this reference incorporates the same as though fully set forth herein.

*A.   Background*

9. Plaintiff Cross Construction Company, LLC specializes in consulting, construction and property management services, with its primary place of business in Nevada.

10. At all relevant times herein, Plaintiff is informed and believes and thereon alleges Defendant Daniel Taheri ("Taheri") has controlling interests in the following business entities:

   a. Defendant LA Laser Center, PC ("LALC"), a California Professional Medical Corporation, located in Modesto, California
   b. Kyrene Walmart & Shopping Center, located in Murrieta, California;
   c. Murrieta Pointe Shopping Center, located in Murrieta, California;
   d. Ridgecrest Dermatology and Skin Cancer Center, located at 1200 N. China Lake Blvd., Ridgecrest, California 93555 ("Ridgecrest Property");
   e. San Clemente Dermatology and Skin Cancer Center, located in San Clemente, California;
   f. Palm Desert Dermatology and Skin Cancer Center, located in Cathedral City, California ("Cathedral City Property");
   g. Property located at 2409 Artesia Blvd., Redondo Beach, California ("Redondo

Beach Property").

    h. Southfork Point Retail Center, located at 2960 St. Rose Parkway, Henderson, Nevada 89052 ("St. Rose Property");

    i. Centennial Corporate Center, located in Las Vegas, Nevada;

    j. Taheri's personal residences located at:

        i. 628 N. Hillcrest, Beverly Hills, California; and

        ii. 1654 Blue Jay Way, Beverly Hills, California.

    k. Various other commercial properties, prospective properties, medical facilities, surgery centers, and residences, located throughout Beverly Hills, California.

### B. *Defendants' Business Dealings*

11. Defendants and Cross exhibited a course of dealing with one another wherein Taheri, acting on behalf of himself and Defendant LALC, entered into several express and implied contracts with Cross and its agents relating to perform a variety of services at dozens of Taheri's business entities, including the aforementioned properties, in exchange for monetary compensation.

12. In the past two years, acting on behalf of himself and Defendant LALC, Taheri promised Cross and its representatives compensation in excess of $200,000 to perform construction, consulting, improvement and management services at the aforementioned properties.

13. Despite promise of full remuneration, Taheri attempted to circumvent the contractual relationship with Cross by publishing false and misleading statements to third parties, including several of Cross's subcontractors and employees, severely damaging the professional relationship Cross had with those individuals and companies.

14. At all relevant times herein, Cross and its agents and employees maintained a professional working relationship with Defendants in connection with their commercial properties.

15. Acting on behalf of himself and Defendant LALC, Taheri also promised Cross and its agents, compensation in excess of $250,000 per year plus expenses to manage Taheri's personal and business affairs. These services were readily and willingly performed by Cross and its agents, sometimes at immediate demand from Taheri.

/ / /

16.     Despite promise of remuneration, Taheri never intended to pay Cross and its agents but initiated a strategy to defraud them of any just compensation or reimbursement through patterns of slander, threat of litigation, criminal conduct including but not limited to threats of bodily harm including "killing [one of Cross's representatives] because he is a disgusting human being."

17.     Taheri habitually used abusive and aggressive methods and tactics, including continuous threats of litigation and financial ruin as a pattern of conduct in an attempt to defraud individuals and businesses, including Cross.

18.     Taheri exhibits a pattern of asserting contracts with Cross on behalf of his companies, including Defendant LALC, for the performance of valuable services. While Cross performs these services at a great expense, Taheri usurps Cross's control and authority, unilaterally changing the terms of the engagement without the authorization of Cross and with the intent to defraud from the onset of the agreement.

19.     Taheri further uses knowledge of Cross's economic opportunities to destroy Cross's business relationships, while making defamatory accusations, lies, falsehoods, and fabrications in an attempt to divert blame away from himself and his business entities and to further cover up his illegal actions across multiple states.

### C.     *Statements Made By Taheri*

20.     Based on information and belief, on or around October 2019, acting on behalf of himself and Defendant LALC Taheri falsely told an individual, that an agent of Cross and Alfredo Ramirez, an employee of Roland Construction, a California company and one of Defendant LALC's subcontractors, split funds paid for a particular job in Murrieta, California despite another contractor actually doing the work. Taheri falsely reported that "nothing was ever performed by Cross or Roland Construction."

21.     Based on information and belief, on or around October 2019, Taheri told Mr. Ramirez and Aaron Garcia, a Cross Construction subcontractor, that a Cross agent "is a thief and a liar" and that "he stole all of his money and lied about the job."

22.     Based on information and belief, on or around October 2019, Taheri told an individual that an agent of Cross "screwed him and held up the Ridgecrest job for no reason" despite Taheri previously authorizing unrelated contractor's and architects to perform illegal improvements to the building prior to Cross Construction starting work for Taheri, including violations pertaining to fire and electrical aspects to the building that could place the occupants

in danger.

23. Based on information and belief, from October 2019 until the present, Taheri told multiple individuals, that an agent of Cross "ripped him off" and "stole from him on every job he ever did," despite telling others the two were "best friends" and "even like brothers."

24. Based on information and belief, from October 2019 until the present, Taheri told multiple individuals that Cross was responsible for Walmart abandoning a lease agreement at one of Taheri's commercial properties in Kyrene, Arizona. Taheri told the Kyrene property manager that Cross was "ripping him off" despite Cross representatives traveling several thousand miles to perform valuable services at Taheri's instant demand and for Taheri's benefit. Cross and its agents performed these services to save Taheri money. Despite submitting invoices to Taheri, Cross and its agents were never reimbursed for their services.

25. Based on information and belief, from October 2019 until the present, Taheri told the City of Ridgecrest, Kern County Fire Department, multiple architects, Cross subcontractors Mr. Ramirez and Mr. Garcia, Taheri's own employees and contractors, that Cross "was responsible for all of the problems he had on all of his properties," including falsely stating that Cross was responsible for "the generator being installed on the wrong side of the property line in Ridgecrest, unpermitted electrical work (actually installed when the building was built), no fire sprinklers in the building, that work had not been performed (when in actuality it had), and that the building was unsafe."

26. By using deceitful statements to key individuals, Taheri subverted business away from Cross, not only resulting in economic damages but damages to Cross and its reputation in the community.

27. Based on information and belief, from October 2019 until the present, Taheri told Cross subcontractors Mr. Ramirez and Mr. Garcia, that Cross "had performed major non-permitted work on one of Taheri's properties at Cathedral City near Palm Springs, California" (the "Cathedral City Property") despite Cross agents never having visited the location. Taheri continues to spread falsehoods that Cross performed illegal and defective work at the Cathedral City Property and further stated that he "would make [Cross] pay for doing these highly unsafe and illegal acts."

D. **Cathedral City Industrial Project**

28. Cross was scheduled to begin work on an industrial project near the Cathedral City Property.

29. Taheri had direct knowledge of the industrial project due to communications with agents of Cross and subcontractors used by both Cross and Defendant LALC.

30. The Cathedral City Industrial Project (the "Project"), which was a long-awaited project for Cross after expending significant time and effort to procure the project at a total loss, was subsequently revoked due to Taheri's incessant casting of hate and falsehoods about Cross and it's agents' good faith and character.

31. Taheri's deceitful statements caused Cross to lose several key subcontractors and employees. This ultimately resulted in the loss of the Project, severing any future relationship with the current owner of the project, and damaging Cross's ability to receive future contracts from this particular owner which total an estimated thirty million dollars ($30,000,000).

32. The estimated total cost of the Project alone was fifteen million dollars ($15,000,000). Cross's estimated profits on the Project would have been two million dollars ($2,000,000). In conjunction with the project, Cross has already exerted significant expenses at a direct cost of over one hundred and fifty thousand dollars ($150,000) to cover time, personnel, assets and overhead for the project.

33. Due to Taheri's fabrications and lies, Cross has lost relationships with many professionals and contractors in the Southern California and Nevada real estate markets procured by over 30 years of relationship-building. False statements circulated by Taheri about Cross and its agents amongst the real estate community caused the loss of several projects worth millions of dollars.

**FIRST CLAIM FOR RELIEF**

**Fraud**

34. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

35. Acting on behalf of himself and Defendant LALC, Taheri entered into contracts with Cross and its agents relating to the management and construction of dozens of properties.

36. Acting on behalf of himself and Defendant LALC, Taheri specifically represented to Cross and its agents that Defendants would compensate them in excess of $250,000 per year plus expenses to manage Defendants' personal and business affairs, manage Defendants' commercial properties, and to complete certain construction improvements and projects.

37. At the time Defendants made these representations to Cross and it's representatives, Taheri knew he would never follow through with his compensation promises and

instead initiated a strategy to defraud them of any just compensation or reimbursement through patterns of slander, continuous threats of litigation, and criminal conduct including but not limited to threats of bodily harm including at one time, "killing [one of Cross's representatives] because he is a disgusting human being."

38. Cross and its representatives performed services readily and willingly for Defendants, sometimes at immediate demand from Taheri, in reasonable reliance of Taheri's representations on behalf of himself and LALC.

39. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial, but in excess of $250,000.

40. As a further result of Defendants' conduct, Plaintiff has retained the services of an attorney, for which Plaintiff has incurred and will continue to incur attorney fees and costs.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

41. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

42. Acting on behalf of himself and Defendant LALC, Taheri entered into contracts with Cross and its representatives relating to the management and construction of dozens of properties.

43. Acting on behalf of himself and Defendant LALC, Taheri specifically represented to Cross and its agents that Defendants would compensate them in excess of $250,000 per year plus expenses to manage Defendants' personal and business affairs, manage Defendants' commercial properties, and to complete certain construction improvements and projects.

44. At the time Defendants made these representations to Cross and it's representatives, they never intended to follow through with their promises but instead initiated a strategy to defraud them of any just compensation or reimbursement through patterns of slander, continuous threats of litigation, and criminal conduct including but not limited to threats of bodily harm including at one time, "killing [one of Cross's representatives] because he is a disgusting human being."

45. Cross and its representatives performed services readily and willingly for Defendants, sometimes at immediate demand from Taheri, in reasonable reliance of Taheri's representations on behalf of himself and LALC.

///

7                                           KB/26703

46. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial, but in excess of $250,000.

47. As a further result of Defendants' conduct, Plaintiff has retained the services of an attorney, for which Plaintiff has incurred and will continue to incur attorney fees and costs.

### THIRD CLAIM FOR RELIEF

#### Defamation

48. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

49. Defendant acting on behalf of himself and LALC, conveyed information by written and oral communications on multiple occasions that Plaintiff and its agents, a reputable construction company and its employees in the Southern California and Nevada areas, performed illegal and defective work.

50. The timing, manner and means by which Taheri collected and selected the information to be conveyed, the timing of the communications, the substance, and then the manner by which Taheri communicated accusations and information falsely implicated Plaintiff performed illegal and defective work.

51. The aforementioned actions, alone and collectively, constitute the required element of publication.

52. Defendant published false and misleading statements to numerous third party individuals regarding Plaintiff and its agents' professional ability, honesty, and integrity that included the following false and misleading statements:

   a. That an agent of Cross and an agent of Roland Construction, Mr. Ramirez, one of Defendant LALC's subcontractors, split funds paid for a particular job in Murrieta, California despite the fact that "nothing was ever performed by Cross and/or Roland Construction.

   b. That an agent of Cross, "is a thief and a liar" and that "he stole all of his money and lied about the job."

   c. That an agent of Cross, "screwed [Taheri] and held up the Ridgecrest job for no reason" despite Taheri previously authorizing unrelated contractor's and architects to perform illegal improvements to the build prior to Cross starting work for Taheri.

   d. That an agent of Cross "ripped [Taheri] off" and "stole from him on every job

he ever did," despite telling others the two were "best friends" and "even like brothers."

e. That Cross was responsible for Walmart abandoning a lease agreement at one of Taheri's commercial properties in Kyrene, Arizona. Taheri told the Kyrene property manager that Cross was "ripping him off" despite representatives of Cross traveling several thousand miles to perform valuable services at Taheri's instant demand and for Taheri's benefit. Cross performed these services to save Taheri money. Despite submitting invoices to Taheri, Cross was never reimbursed for its services.

f. That Cross, "was responsible for all of the problems he had on all of his properties," including falsely stating that Cross was responsible for "the generator being installed on the wrong side of the property line in Ridgecrest, allowing unpermitted electrical work (actually installed when the building was built), failing to install fire sprinklers in the building, and causing the building to be unsafe"; and

g. That Cross, "had performed major non-permitted work at the LA Laser Palm Desert Dermatology and Skin Cancer Center in Cathedral City, California, despite Cross never having visited the location. Taheri continues to spread falsehoods that Cross performed illegal and defective work at that property and further stated that he "would make them pay for doing these highly unsafe and illegal acts."

53. Defendant's statements have misled and had a deleterious effect on Plaintiff's employers, subcontractors, employees, and potential suitors.

54. Defendant's false statements have injured Plaintiff's reputation with employers, subcontractors, employees, potential suitors, as well as others in the community.

55. Further, Defendant's false statements tend to deter potential suitors and other third persons from associating or dealing with Plaintiffs while disparaging the quality and value of Plaintiffs' work.

56. Defendant's statements about Cross and Cross's representatives are meritless and untrue.

57. Defendant's publications were not stated as matters of opinion.

/ / /

58. The publication of these remarks, documents and information, negatively and falsely impacted Cross and Cross's representative's employment and reputation to their occupation, which constitutes *slander per se*, for which they need not prove specific damages under Nevada law in order to recover.

59. As a direct and proximate cause of Defendant's wrongful and defamatory statements, Plaintiff has suffered damages in an amount to be proven at trial, but in excess of $75,000.

60. In addition to the publications set forth above, Plaintiff reasonably believes that Defendants may have engaged in additional and other publications of defamatory and libelous information about them, of which they are not yet aware but which may as well be injurious and harmful, or constitute *slander per se*, and which will be the subject of discovery in this action.

61. As a further result of Defendants' conduct, it has been necessary for Plaintiff to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

## FOURTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

62. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

63. Cross has contracts with customers, subcontractors, and independent contractors.

64. Defendants knew of these contracts, as a result of communications with agents of Cross and with subcontractors of both Cross and Defendant LALC.

65. Defendants committed intentional acts intended or designated to disrupt those contractual relationships.

66. Those contractual relationships have been disrupted as a result of Defendants' actions.

67. As a result of Defendants' interference, Plaintiff has suffered damages in an amount subject to proof at trial, but in any event in excess of $75,000.

68. As a further result of Defendants' conduct, Plaintiffs have retained the services of an attorney, for which Plaintiff has incurred and will continue to incur attorney fees and costs.

/ / /

/ / /

/ / /

10   KB/26703

## FIFTH CLAIM FOR RELIEF

### Intentional Interference with Prospective Economic Advantage

69. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

70. Prospective contractual relationships exist between Cross and third parties, including customers, contractors, and others.

71. Defendants knew of these prospective relationships.

72. Defendants intended to harm Plaintiff by preventing the relationships.

73. Defendants had no privilege or justification for preventing or interfering with those relationships.

74. As a result of the Defendants' conduct and actions this interference has caused actual harm and damages to the Plaintiff in an amount subject to proof at trial but, in any event, in excess of $75,000.

75. The Defendants' breaches have made it necessary for the Plaintiff to retain counsel in order to pursue its rights, and Plaintiff is entitled to recovery of attorney's fees and costs incurred as a result of these breaches.

## DEMAND FOR JURY TRIAL

76. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant Judgment to Plaintiff, respectively, and against Defendants, jointly and severally, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1. For general, compensatory, expectation, and consequential damages in excess of fifteen thousand dollars ($75,000.00).
2. For punitive damages against Defendants;
3. For reasonable attorney fees for having to bring this action;
4. For costs of suit incurred herein; and

/ / /

/ / /

/ / /

/ / /

/ / /

5. For such other and further relief as the Court may deem appropriate.

DATED this 26th day of May, 2020.

ALVERSON TAYLOR & SANDERS

/s/ Adam R. Knecht
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
6605 Grand Montecito Parkway
Suite 200
Las Vegas, Nevada 89149
(702) 384-7000
(702) 385-7000 (Fax)
efile@alversontaylor.com
*Attorneys for Plaintiff*
*Cross Construction Company, LLC*